**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| GENESIS GOLD CORP., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> CED GOLD, LLC, ) <br> ) <br> Defendant. ) | 3:15-cv-00042-RCJ-WGC <br><br> **ORDER** |

This case arises out of a contractual dispute. Pending before the Court is Plaintiff's resubmitted Motion for Summary Judgment (ECF No. 13).

## I. FACTS AND PROCEDURAL HISTORY

On or about August 23, 2010, Plaintiff Genesis Gold Corp. ("Genesis") and Defendant CED Gold, LLC ("CED" or "Navaho Gold") entered into an Option Agreement. (First. Am. Compl. ¶ 6, ECF No. 27). The Option Agreement required CED to make certain payments to Genesis ("Option Payments"), including a payment of $100,000 due on August 23, 2014 ("the Year 5 Option Payment"), which CED failed to make. (*Id.* ¶¶ 7–10). Genesis sent CED a notice of default as to the Year 5 Option Payment on October 14, 2014, giving CED the opportunity to cure the default by October 20, 2014, but CED failed to cure by the date of the Complaint. (*Id.* ¶¶ 11–15). Under the Option Agreement, CED was permitted to exercise an option ("the Option"), upon which exercise the parties would have been deemed to have entered into a separate contract ("the Sales Contract") attached as Schedule 1 to the Option Agreement. (*Id.*).

CED could not exercise the Option, however, without satisfying certain terms, including making all Option Payments and paying the Option Exercise Price. (*Id.* ¶ 18). CED failed to make the Year 5 Option Payment, failed to pay the Option Exercise Price, and failed to provide Genesis with a signed, written notice of exercise of the option, all of which were required for exercise of the Option. (*Id.* ¶¶ 18–21).

Genesis sued CED in this Court for: (1) breach of contract; and (2) a declaration that the Option Agreement has been terminated by CED's default. CED answered and counterclaimed for: (1) a declaration that the Option Agreement had been modified ("the Amended Agreement") through mutual assent of the parties; and (2) breach of the Amended Agreement by anticipatory repudiation. (*See* Answer & Countercl. 5–6, ECF No. 7). Genesis moved for defensive summary judgment against the counterclaims and for offensive summary judgment on its own claims. The Court denied the motion without prejudice and required Genesis to amend to properly plead diversity jurisdiction. The parties have stipulated to the filing of the First Amended Complaint ("FAC") and to the resubmission of the previous motion and related briefings.

## II.     SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would

bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court needn't consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the nonmoving party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the nonmoving party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477

U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.  Notably, facts are only viewed in the light most favorable to the nonmoving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007).  That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

### III.     ANALYSIS

#### A.     Subject Matter Jurisdiction

The Court previously noted that Genesis had not properly pled CED's citizenship.  Genesis bears the burden of showing complete diversity. *See Resnik v. La Paz Guest Ranch*, 289 F.2d 814, 819 (9th Cir. 1961) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178 (1936)).  The Complaint stated that Genesis is a Utah corporation with its principle place of business in Utah. (*See* Compl. ¶ 1).  For purposes of diversity jurisdiction, a corporation is a citizen both of its state of incorporation and the state where its headquarters is located. *Hertz Corp. v. Friend*, 559 U.S. 77, 85–93 (2010).  It was a fair inference from the Complaint that Genesis's headquarters is in Utah.  But as to CED the Complaint stated only that CED is a Nevada limited liability company with its principle place of business in Australia. (*See id.* ¶ 2).  The Court noted that as a limited liability company, CED has the citizenship of each of its members for the purposes of diversity jurisdiction; its place of registration and the locations of its headquarters and other places of business are irrelevant. *See Johnson v. Colombia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens.").

In the FAC, Genesis alleges that CED's sole member is Eureka Gold (US) LLC, which in turn is a Nevada limited liability company whose sole member is Navaho Gold, Ltd., an Australian "entity." (First Am. Compl. ¶ 2, ECF No. 21-2). Unincorporated foreign civil law business entities are not treated as corporations for the purposes of diversity. *See Cohn v. Rosenfeld*, 733, F.2d 625, 929–30 (9th Cir. 1984) (holding that a "Anstalt" under Lichtenstein law was not a corporation for the purposes of 28 U.S.C. § 1332(c) but was a "citizen or subject" of Lichtenstein for the purposes of § 1332(a)(2) because it was a juridical person that could sue and be sued under Lichtenstein law). "Navaho Gold Limited" is listed as a historical name for "Dark Horse Resources Limited" in the online Australian Business Register, the name having been changed in December 2015. *See* ABR, http://www.abr.business.gov.au. Dark Horse Resources is listed as an "Australian Private Company." Presumably, such an entity may sue or be sued. The Court is therefore satisfied that it has subject matter jurisdiction.

### B.     Summary Judgment

Before the Court can determine default under the Options Agreement or anticipatory repudiation under the Amended Agreement, the Court must first examine which agreement was in effect at the time of the purported default, i.e., the undisputed failure to make the $100,000 Year 5 Option Payment on August 23, 2014. The Court therefore begins by examining whether there is any genuine issue of material fact that the Options Agreement was modified by mutual assent before that date. Nevada's jury instruction on contract modification reads:

> To prove modification, there must be clear and convincing evidence of:
>
> 1. A written or oral agreement of the parties to modify the contract; or
>
> 2. Conduct of the parties that recognizes the modification, such as a course of performance that reflects the modification; or
>
> 3. Other evidence sufficient to show the parties' agreement to modify their contract, such as acquiescence in conduct that is consistent with the modification and a failure to demand adherence to the original contract terms.

Nev. J.I. 13CN.15 (citing *J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1020–21 (Nev. 2004); *Jensen v. Jensen*, 753 P.2d 342, 344 (Nev. 1988); *Joseph F. Sanson Inv. Co. v. Cleland*, 625 P.2d 566 (Nev. 1981); *Clark Cnty. Sports Enters., Inc. v. City of Las Vegas*, 606 P.2d 171, 175 (Nev. 1980); *Silver Dollar Club v. Cosgriff Neon*, 389 P.2d 923, 924 (Nev. 1964)).  The suggested jury instructions are only persuasive authority, but the Court finds the instruction to be an accurate reflection of the law as provided in the cited cases.

Because the nonmoving party, CED, would bear the burden of showing modification by clear and convincing evidence at trial, Genesis must present evidence to negate an essential element of the claim of modification or demonstrate that CED has failed to make a showing sufficient to establish an element of modification. *See Celotex Corp.*, 477 U.S. at 323–24. Genesis has shown that CED has failed to make a showing of mutual assent to new terms either through written agreement or a course of performance or other conduct consistent with the alleged modification.

CED offers four pieces of evidence relevant to the alleged modification.  First is an August 20, 2014 letter from Navaho Gold to Genesis memorializing negotiations between the parties to modify the Options Agreement. (*See* Negotiation Letter, ECF No. 15-2).  Second is a September 12, 2014 letter from Navaho Gold to Genesis, whereby Navaho Gold accepted a counteroffer by Genesis. (*See* Acceptance Letter 1, ECF No. 15-3 ("We are prepared to accept your offer as outlined in your letter of 23 August 2014, on the basis that our 20% interest is immediately recognized in the claim titles themselves, as opposed to being pursuant to the Agreement.").  Third is a September 15, 2014 letter from Genesis to Navaho Gold in which Genesis notes its pleasure that CED had accepted Genesis's counteroffer. (*See* Confirmation Letter 3, ECF No. 15-4 ("In regards to your proposal on Carlin East, we are pleased that you have decided to accept our counter offer of 9/4/2014.  However, the recordation of your 20%

interest will occur only after a new agreement has been completed and signed by both parties. Just to be clear, it is not our intention for Navaho to be in a position to withdraw and maintain ownership if they do not proceed with expenditures and payments as per the new contract.")). Fourth is the August 23, 2014 letter from Genesis to Navaho Gold referred to in the Acceptance Letter. (*See* Counteroffer Letter, ECF No. 15-7). The Counteroffer Letter proposes that Navaho Gold have 20% rather than 30% equity in the Carlin East claims, with the ability to obtain more equity by drilling certain holes and developing a mine. (*Id.* 1). The counteroffer also proposed raising the quarterly management fees according to a proposed schedule. (*Id.*). It describes the changes as "a radical diversion from our existing deal." (*Id.* 2).

      The Court finds that Genesis is entitled to defensive summary judgment against the counterclaim for a declaration that the Option Agreement was modified, and also therefore against the counterclaim for anticipatory breach of the putative Amended Agreement. The evidence adduced does not permit a jury to find a modification by a preponderance of the evidence, much less by clear and convincing evidence. Although the Counteroffer Letter does appear to show that the intent was to totally restructure the Option Agreement, the Confirmation Letter makes clear that the parties did not mutually assent to all material terms, absent some additional evidence that CED does not attach. Specifically, Genesis refused to accept Navaho Gold's requested term concerning the timing of the recordation of Navaho Gold's interest in the relevant rights. (*See* Confirmation Letter 3). Navaho Gold's demand for this additional term via the Acceptance Letter was an explicit condition, i.e., it was itself a counteroffer that Genesis did not accept via the Confirmation Letter. (*See* Acceptance Letter 1 ("We are prepared to accept your offer as outlined in your letter of 23 August 2014, *on the basis that our 20% interest is immediately recognized in the claim titles themselves, as opposed to being pursuant to the Agreement*." (emphasis added)); Confirmation Letter 3 ("*However, the recordation of your 20%*

*interest will occur only after a new agreement has been completed and signed by both parties. Just to be clear, it is not our intention for Navaho to be in a position to withdraw and maintain ownership if they do not proceed with expenditures and payments as per the new contract."* (emphasis added))). No evidence tends to show that the parties agreed in writing to mutual terms of any modification, and Genesis's October 14, 2014 letter to CED complaining of the missed Year 5 Option Payment under the Option Agreement negates any claim of a course of conduct consistent with a modification. (*See* Default Letter, ECF No. 15-5).

In summary, Genesis is entitled to defensive summary judgment against the claims for a declaration that the Option Agreement was modified and that Genesis breached the putative Amended Agreement. Next, it does not appear disputed that the Option Agreement was valid and binding and that CED failed to make the Year 5 Option Payment as required thereunder. CED does not argue to the contrary but bases its entire defense on its claim of modification. Genesis is therefore entitled to offensive summary judgment on its claim for breach of the Option Agreement.

The only issues remaining are damages caused by the breach, which must be determined by a jury (both parties have demanded a jury) unless the parties can stipulate to an amount, and Genesis's requested declaration that the Option Agreement has been terminated due to CED's breach. Genesis argues that "because Navaho's breach constitutes a failure of consideration, the Option Agreement has terminated." Failure of consideration, however, is a basis for finding a contract to be invalid from inception, not a basis to find that an otherwise valid contract has been terminated by the breach of a party; i.e., consideration by each party is a prerequisite to a valid contract, and consideration concerns only the promise made, not the performance thereof. *See* Restatement (Second) of Contracts § 71 (1981). The Option Agreement here included consideration from both parties. It is not invalid for failure of consideration. Indeed, if it were,

CED could successfully argue that it had no duty to perform under the invalid contract. What Genesis properly seeks is a declaration that it no longer has the duty to perform under the Option Agreement due to CED's uncured material breach. *See id.* § 237 ("[I]t is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time."). The Court grants offensive summary judgment to Genesis for a declaration to this effect.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 13) is GRANTED. The issue of damages remains for trial.

IT IS SO ORDERED.

DATED: This 16th day of September, 2016.

_____
ROBERT C. JONES
United States District Judge